**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| VEHICLE SERVICES GROUP, LLC, | ) | Judge Sarah Evans Barker |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 4:13-cv-00195-SEB-WGH |
| | ) | |
| MOHAWK RESOURCES, LTD | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF VEHICLE SERVICE GROUP, LLC'S OPPOSITION**
**TO DEFENDANT'S MOTION TO STAY PROCEEDINGS OR,**
**IN THE ALTERNATIVE, FOR EXTENSION OF TIME**
**TO RESPOND UNDER RULE 12**

1.      **Introduction**

Even if the United States Patent and Trademark Office (USPTO) grants Defendant Mohawk Resources, Ltd. ("Mohawk") all of the relief it seeks in its request for *inter partes review* ("IPR"), this case will still need to proceed.  The patent-in-suit, U.S. Patent 6,983,196 ("the '196 patent") has 162 claims.  Mohawk admits that it has chosen to challenge only 33, barely 20% of the claims in the '196 patent.  Among the claims that Mohawk chose not to challenge were claims 1, 145, and 146, each of which Plaintiff Vehicle Service Group, LLC ("VSG") specifically identified as being infringed in its Complaint, Complaint, Dkt. 1, at ¶¶ 14-18.  Thus, no matter what the USPTO decides, this patent infringement case will remain viable. As a result, Mohawk's motion for a stay should be denied.

II.     **Background**

VSG has licensed its '196 patent to four other significant manufacturers of vehicle lifts. Among its obligations under those agreements, VSG must enforce its '196 patent against Mohawk, in part to protect its licensees from such competitors using the patented technology at no cost.  The license VSG has offered to Mohawk has terms comparable to those in its other license agreements.

A.      **VSG**

VSG has been in the business of vehicle lifts for almost ninety years.  Its founder, inspired by a hydraulic barber chair, invented the world's first automotive hydraulic lift in 1925. Since that time, VSG has become a world leader in vehicle lifts, many of which are produced in Madison, Indiana.  VSG is the preferred supplier, and often exclusive supplier, to well-known automotive repair organizations such as Sears, Firestone, GM, MBUSA, BMW, Goodyear, Pep

Boys, Monro, and many others.   This prestigious position is a reflection of its exceptional customer service and product quality.

**B.      The Technology**

Vehicle lifts are used to elevate a vehicle, such as a car or a heavy-duty truck, so that it can be serviced safely and conveniently.  Mobile column lifts are individual moveable lifts that are used in sets to lift a vehicle.  An individual mobile column lift is pictured below:



Shown: RCHU2F4001

Each mobile column lift has wheels on its base so that it can be rolled into position around the tires of the vehicle to be lifted.  The set of mobile column lifts can then be operated together to elevate the vehicle to the desired height, as shown below:



**C.      The '196 Patent**

The '196 patent is directed to a vehicle lift that has an electronic control which functions to control the raising and lowering of the lift and to enable the display of a variety of information regarding the operation of the lift.  It has 162 claims, including 19 independent claims.  During prosecution of the application that became the '196 patent, the pending claims were amended merely to address some informalities, particularly issues of antecedent basis and the like.  As a result, the claims of the '196 patent are entitled to the full scope of equivalents under the doctrine of equivalents.

As explained with respect to at least three exemplary claims in its Complaint filed in the Southern District of Indiana, based on a review of publicly available information on Mohawk's website including the Installation and Operation Manual, VSG has concluded that Mohawk infringes several of the claims of the '196 patent.  Some of this information about the accused lifts is pictured below:

## SMART AUTO LIFTS

- All columns operate together, individually or can be divided into separate pairs.
- All columns act as control columns to raise or lower vehicles.
- 67" lifting stroke for tall mechanics.
- **Adjustable** lifting forks accommodate **the widest range of wheels** from 13" to 24" for up to 48" diameter tires (wider carriages optional for larger tires). No wheel reducer sleeves needed.
- Optional Auto Frame adaptor available for passenger cars & light trucks.
- Sealed rollers on the wheels for easy movement of the columns.
- Hydraulic operation (no screw drives) for efficient, fast & easy lifting.
- Barrel type roller bearings on carriages for a lifetime of trouble free service (no plastic slide blocks or plastic rollers).
- Sealed roller bearings on carriages for a lifetime of trouble free service (no plastic slide blocks or plastic rollers).



- 208-240 volt 3 phase standard, also optional 440/460 volt or single phase, or 24 volt DC operation.
- Communication and electrical cables disconnect at both ends.
- Manual safety over-ride permits columns to be lowered in a power outage **without using hand cranks.**

## 24 VOLT DC OPERATED LIFT


**DEEP CYCLE BATTERIES**


**LCD SCREEN**


**DC CONTROL PANEL**



- Mohawk's simple to operate and simple to understand control consoles are the same on all posts.

- Any post will raise, lower, or park (lock) the lift.

- Each post is equipped with an emergency stop button to turn the lift off. Each column equipped with a switch to operate all columns, pairs or a single column.

- Lift notifies operator when batteries need to be charged, communications are halted, stops haven't been released and many other user functions.

- Easily programmed, password protected, auto height limiter for low ceiling shops.

Exhibit A to Complaint.

The relevant control box was attached to the Complaint as Exhibit B:



The networkable columns, each with a control box, were pictured in Exhibit C of the Complaint:



As a first example and as set forth in the Complaint, Claim 1 requires a vehicle lift comprising a moveable lift engagement structure and a control comprising a first computer processor configured to selectively control raising and lowering the moveable lift engagement structure in response to user input and a second computer processor configured to enable display of lift data. Each of the Mohawk lifts pictured above is a vehicle lift with a moveable lift engagement structure. Each has a control that includes a processor for selectively raising and lowering the moveable lift engagement structure in response to user input and a display unit for display of lift data. Therefore, VSG believes Mohawk's lifts literally infringe claim 1. Based on

8

the information in Mohawk's publicly available advertising materials, Mohawk's lifts infringe many of the claims depending from claim 1, as well.

As a second example also included in the Complaint, claim 145 of the '196 patent requires a computer communication network, a computer processor connected to the network, a plurality of movable lift vehicle lifts connected to the network, logic control to control raising and lowering each moveable lift engagement structure individually and logic control to enable display of lift data pertaining to the plurality of vehicle lifts.  According to its advertising materials shown above, Mohawk actively induces its customers to network together 2, 4, or 6 of its moveable lifts and Mohawk sells those lifts for the sole purpose of having them networked together.  For at least that reason, Mohawk at least induces infringement of claim 145 of the '196 patent.

The Complaint contained a third example, describing how Mohawk's lifts were infringed by claim 146 of the '196 patent.  Claim 146 depends from claim 145 and further requires the lifts to have respective controls, each of which is configured to cause the control logic to selectively control raising and lowering each moveable lift.  As shown in the above advertising materials, the Mohawk lifts each contain such a respective control that allows the moveable lift to be selectively raised or lowered.  Such selective movement is further shown in the Installation and Operation Guide, Exhibit A hereto, *e.g.*, at 10.

In its IPR, Mohawk did not request the USPTO to review any of the three claims specifically identified in the Complaint as being infringed by Mohawk.  In addition, numerous other claims not included in the IPR are believed to be infringed by the Mohawk lifts.  Among these infringed claims are claims 72-74, 80, 85-88, 136-38, and several of the claims depending from claim 1.

9

### D.      VSG Did Not Delay

VSG had worked in good faith to negotiate a resolution to Mohawk's infringing activities in defense of the '196 patent since the time when it filed its Complaint.  However, shortly before VSG's pending deadline to serve its complaint, rather than continue the discussion or resolve the matter, Mohawk filed a request for an IPR of the '196 patent at the USPTO.  In light of that abrupt stop in the negotiation, VSG had no choice but to serve its Complaint and begin this litigation in earnest.  There was no "delay" on the part of VSG as Mohawk attempts to characterize the facts; rather VSG was genuinely attempting to resolve a dispute without either party needing to resort to the expense or distraction of litigation.

Mohawk knew of the complaint shortly after it was filed in December 2013 because VSG provided it with a copy of the Complaint on December 11, 2013. Email of Kirk Dawson, Exh. B. VSG refrained from serving the Complaint immediately in an effort to minimize both parties' expense (a vain effort in light of Mohawk's decision to increase both parties' costs by filing an IPR).  Mohawk's cries of delay ring hollow in light of its admissions regarding VSG's diligence in enforcing its '196 patent, including negotiating licenses with other licenses and undertaking litigation with Stertil-Koni.  Brief, Dkt. 11 at 4-5.

Now it is Mohawk that seeks to delay a final reckoning by attempting to use the filing of IPR as a lever to delay this litigation.  Because Mohawk has randomly chosen only 33 of the 162 claims in the '196 patent, the result of the IPR has no impact on this litigation.  Even if Mohawk wins everything it has asked of the USPTO, this litigation will still move forward.  For this reason, this action should not be stayed – the IPR is irrelevant.  Mohawk's strategy is apparent given its superficial explanation for not attacking all of the '196 claims in the IPR:  it was not worth the money to address all of the claims (and apparently not even the three claims

specifically identified as infringed in the Complaint).  Brief, at 6. It appears Mohawk was willing to spend some money in the hope that the Court would automatically grant a stay merely because an IPR of some claims had been filed but not enough to address all of the claims in the '196 patent. In this case, the IPR is nothing more than a distraction that will serve to delay the complete resolution of the parties' dispute.

## III.   ARGUMENT

Courts traditionally consider three factors in determining whether to stay a case pending the USPTO's review of a patent in suit:  1) whether a stay will simplify the issues; 2) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party; and 3) whether discovery is complete and whether a trial date has been set.  *See, Bonutti Skeletal Innov., LLC v. Zimmer Holdings, Inc.,* 2014 WL 1369721, *2 (April 7, 2014, D. Del.); *TruePosition, Inc. v. Polaris Wireless, Inc.,* 2013 WL 5701529, *3 (October 21, 2013 D. Del.). Indiana courts have applied a four part test that considers essentially the same factors:  whether the litigation is at an early stage, whether a stay will unduly prejudice or tactically disadvantage the non-moving party; whether a stay will simplify the issues in question and streamline the trial, and whether a stay will reduce the burden of litigation on the parties and the court.  *Endotach LLC v. Cook Med. Inc.,* 2014 WL 852831, *3 (March 5, 2014 S.D. Ind.).

### A.      A Stay Does Not Simplify The Issues

The '196 patent has 162 claims.  In its Complaint, VSG expressly identified three claims that it believes Mohawk to be infringing:  claims 1, 145, and 146.  In addition, in this response, VSG has identified more than 11 additional claims that it contends Mohawk is infringing.  None of these 14 or more claims are involved in the IPR.  Therefore, even if Mohawk is completely

successful in its IPR, this litigation will need to proceed and the issues regarding the construction of the claim terms, infringement of any claims, and any challenges to their validity will remain.

Mohawk suggests that a determination of validity on claims in the IPR will simplify the Court's determination of validity of those claims not reviewed by the USPTO.  VSG disagrees. The standard for determining validity in the USPTO is different than the standard that applies in this Court.  *In re Swanson*, 540 F.3d 1368, 1378-1379 (Fed. Cir. 2008) ("the two forums have different standards of proof for determining invalidity … the court's final judgment and the examiner's rejection are not duplicative—they are differing proceedings with different evidentiary standards for validity.")  At the USPTO, the standard for invalidating the claims is preponderance of the evidence.  *Id.* ("In PTO examinations and reexaminations, the standard of proof—a preponderance of evidence—is substantially lower than in a civil case…")  Before this Court, Mohawk will have to prove any claims are invalid by clear and convincing evidence.  *Id.* at 1377 ("In civil litigation, a challenger who attacks the validity of patent claims must overcome the presumption of validity with clear and convincing evidence that the patent is invalid.); 35 U.S.C. § 282.  Thus, a finding that a particular claim is invalid in the IPR carries little precedential weight before this Court particularly with respect to the other claims not reviewed by the USPTO.

For at least that reason, Mohawk is incorrect when it asserts that a finding of invalidity of a claim in the IPR will "effectively eliminate[e] from contention any claims that are identical[1] or substantially similar to the challenged claims."  Likewise, Mohawk is inaccurate when it suggests that any appeal of the findings of the IPR will provide an "authoritative

---

[1] Of course, the argument that any claims in the '196 patent are "identical" is also incorrect in light of the presumption that each claim has a different scope.  *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1326 (Fed. Cir. 2003) ("There is a rebuttable presumption that different claims are of different scope.")

pronouncement" that will "benefit" this Court – the issues addressed by any such appeal will necessarily be very different and of little aid to this Court.

Likewise, Mohawk wants to lure this Court into believing that it will be relieved of the burden of construing the claims pending in this litigation.  The USPTO is required to construe the claim terms with their broadest reasonable meaning.  *In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004) ("During examination, claims ... are to be given their broadest reasonable interpretation….   The 'broadest reasonable construction' rule applies to reexaminations as well as initial examinations.")  (Internal quotations omitted.)  This Court must construe the claims, using the precepts set forth in *Phillips,* in accordance with the words of the claims, the specification, and the prosecution history.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005). Irrespective of any claim construction provided by the USPTO, this Court will need to separately analyze any disputed claim terms and come to its own conclusions using the law that applies to claim construction in the courts.  The IPR will not simplify that process either.

Mohawk also posits the existence of Rule 12 and post-Rule 12 "complications."  Brief, at 9-10.  It does not explain what those issues are or how they will be simplified if the case does not begin until after the IPR.  In fact, whatever Rule 12 issues Mohawk believes may exist will only be delayed in their resolution by a stay.  Likewise, moving forward under the Court's case management plan for patents will move this case much more quickly to resolution.  As noted above, the claim construction and validity issues will be addressed with very different standards in this Court.  In addition, the IPR will not address any issues of infringement – that issue is solely the province of this Court.

Mohawk's brief is unrealistically hopeful about the speed with which an IPR will be resolved, arguing that a decision will be granted within one year. Brief, at 8, 9, 17. In fact, the timeline is much longer:

> The patent owner [] has three months from the date of notice to file a preliminary response. Thereafter, the PTO has three months from the date of the patent owner's preliminary response to decide whether to grant the petition for IPR…After a decision by the PTO to grant or deny the IPR petition, the PTO has one year, subject to a 6-month extension, to issue its finding which are subject to appeal to the United States Court of Appeals for the Federal Circuit.

*TruePosition, Inc. v. Polaris Wireless, Inc.,* 2013 WL 5701529, at *2 (internal citations omitted). Mohawk's petition was granted a filing date of February 26, 2014. Therefore, in light of the true schedule, a final decision may not be provided by the USPTO until February 26, 2016. That date would be almost a year after any claim construction hearing would be expected (no later than 375 days after the Anchor Date) under this Court's case management plan for patents. Case Management Plan in Patent Cases, at 7.

Mohawk's request for a stay could also be denied because it is premature. The USPTO has not yet agreed to review any of the claims of the '196 patent. That decision is not expected until the end of August 2014. *Endotach,* 2014 WL 852831, at *5 (denying stay and noting "there is no guarantee that the USPTO will grant [defendant's] petition for IPR, which adds to the uncertainty of how much the IPR proceedings would simplify the issues in this case.").

The IPR cannot dispense with this case, nor can it dispense with issues of claim construction, claim infringement, or claim validity. It will not simplify this case. This is a case where "the scope of the issues in litigation substantially exceeds the scope of the issues on review" and so "a stay is disfavored." *TruePosition, Inc.,* 2013 WL 5701529, at *5 (denying a request for stay where one claim was not at issue in the IPR and there were invalidity challenges that could not be addressed by the USPTO). For that reason alone, this case should not be stayed

and it should proceed in parallel with the USPTO IPR proceeding to provide a complete resolution of the parties' dispute.

### B.    A Stay Will Prejudice VSG

Mohawk and VSG each sell vehicle lifts and are direct competitors.  Brief, at 4.  While Mohawk practices VSG's patented technology without compensation to VSG, VSG (and its licensees which are properly paying a royalty) are harmed.  Because of that prejudice, at least Delaware courts have "been reluctant to stay proceedings in situations where parties are direct competitors."  *TruePosition, Inc.,* 2013 WL 5701529, at *5.  This factor weighs in favor of denying Mohawk's request for a stay.  "Courts have recognized that when the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill.  *See, e.g., Nat'l Prods., Inc. v. Gamber–Johnson LLC,* No. 2:12–cv–00840, 2012 WL 3527938, at *2–3 (W.D.Wash. Aug. 14, 2012)" *Senorx, Inc. v. Hologic, Inc.,* 2013 WL 144255, *7 (January 11, 2013 D.Del.) (denying motion for stay).

Mohawk argues essentially that VSG should be punished and be forced to await "its day in court" merely because VSG first tried to resolve the dispute through negotiation.  Brief, at 17.  That argument runs counter to the preference in the courts for settlement of disputes ,where that is possible.

### C.    The Early Stage Of This Litigation Is Irrelevant

This case has just begun.  However, the breadth of issues that will remain irrespective of the results of the IPR and the relative speed with which this Court's patent case management

plan will address those matters do not support the granting of a stay in this case and render this factor inapposite under the facts of this case.

> **D.      A Stay Will Not Alter The Burden On The Court Or The Parties**

As explained above, regardless of the outcome of the IPR, this Court will be required to construe the claims, determine validity or invalidity of numerous patent claims, and decide (or have a jury decide) whether any of the claims of the '196 patent are infringed.  A stay will not alter that burden.  It would be expeditious and perhaps promote settlement to have the parties proceed on parallel tracks and begin to address these issues sooner rather than later.

## IV.      CONCLUSION

Because significant issues of patent validity, claim construction, and infringement remain in this case no matter the outcome in the IPR, this case should not be stayed.  VSG does not oppose Mohawk's request for a thirty day extension to answer or otherwise respond to the Complaint.

Respectfully submitted,

FROST BROWN TODD LLC


By:   */s/ James Dimos*
    James Dimos, #11178-49
    Ann G. Schoen, PHV

    Attorneys for Plaintiff
    Vehicle Service Group, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of May, 2014, a copy of the foregoing was filed electronically.   Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's system.

> Janet P. Jakubowicz
> BINGHAM GREENEBAUM DOLL LLP
> 3500 National City Tower
> Louisville, Kentucky 40202
> 502-587-3664
> jjakubowicz@bgdlegal.com

> */s/ James Dimos*

FROST BROWN TODD LLC
201 North Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN  46244-0961
317-237-3800
Fax: 317-237-3900
*jdimos@fbtlaw.com*

P:\CPI images\Vehicle Service Group LLC v Mohawk Resources LTD\Opp to Motion to Stay\Opposition to Motion to Stay - Final as Filed 5-12-14.doc

17